The State of Ohio, Appellee, *v.* Debo, Appellant.

[Cite as State v. Debo, 8 Ohio App. 2d 325.]

(No. 1185—Decided December 21, 1966.)

*Mr. Robert O. Stout,* prosecuting attorney, for appellee.
*Mr. Thomas C. Fetter,* for appellant.

*Per Curiam.* Defendant, Roy W. Debo, appellant herein, was found guilty by a jury of the crime of first degree murder, with mercy recommended, and is now serving a life sentence pursuant thereto.

It is undisputed in evidence that Debo shot and killed one Kramer Bowden near a road intersection in Marion County, about 6:20 p. m. on June 29, 1965; that Debo and Bowden's wife had been childhood sweethearts, had not seen each other for about twenty years while Debo was in the Army, and, upon his retirement therefrom, were both active in rekindling the flame which apparently had not been fully extinguished; that on the afternoon of June 29, 1965, Bowden had visited Debo's place of business and had said "he was going to beat me [Debo] up and he would kill me the first chance he got"; that minutes be-

fore the killing Debo drove past the Bowden home; that upon seeing Debo drive by Bowden got in his own car and followed him; and that Bowden caught up with Debo either before or after Debo's arrival at the intersection, where words were spoken between them, they alighted from their respective cars, may have had further words, Debo fired one shot into the ground and then fired the shot which killed Bowden.

Debo testified, among other things:

"When I pulled over [near the intersection] he [Bowden] come right up by the side of my car just as close as he could get crowding me because I went clear off the road on the berm of the road. When I was clear on the berm of the road he stopped right by the side of my car and screamed at me, 'You yellow bastard I've got you now and I'm going to kill you.' He screamed from his car to my car in a loud voice. * * * When he shouted as I am going to tell you he was getting out of his car on the driver's side as fast as he could. He was coming out of his car. I went out of my car on the passenger's side and I picked up that pistol as I went out of the car onto the ground. By that time Kramer Bowden had come around the back end of his car and around the back end of my car and was coming at me. I could just see all of his body where he was coming at me and I yelled stop at him. The man didn't stop. I fired a shot from my pistol at the ground in front of his feet and he still continued to come at me with his arm held out in front of him something like this and his hand was closed. He was then about five or six feet from me—I'll give you an example of that. You split the difference between the rear fender of my car was at and the front door opened on my car split the difference in half from where I fired the first shot at him at the ground when he was right at the rear fender and then about half way from there to the door approximately maybe one second or two seconds between them shots and I fired at the man. I didn't aim or nothing. I just fired at him."

In his first assignment of error defendant claims that evidence of threats which Bowden had made regarding Debo but which had not been communicated to Debo was erroneously excluded from consideration of the jury.

The following apears in the record in the cross-examination of Mrs. Bowden, a witness for the state:

"Q. Did Kramer [Bowden] threaten Debo—A. Yes, he—

"Mr. Stout: I would object to that.

"Q.—to you? Did he make any statement to you?

"Mr. Stout: I would object to that.

"The Court: Yes. It calls for a conclusion. The use of the word 'threaten.'

"Q. Did Kramer ever state to you that he would injure Mr. Debo or anything of this—

"Mr. Stout: I would object to that.

"A. He said if he caught him over there again—

"The Court: Just a moment. The objection is sustained.

"Q. While your husband was carrying this gun in the trunk of the car, these shotguns, did he ever make any statements to you that he was going to use them on Mr. Debo? A. Yes.

"Mr. Stout: I would object to that.

"The Court: Sustained."

On direct examination of Mrs. Debo, a witness for the defendant, and with relation to statements made by the deceased during a visit to her trailer home between one and two o'clock on the afternoon of the homicide, the following appears in the record:

"Q. Did he say anything else? A. He said he was going to castrate—

"Mr. Stout: Object. Move that it be stricken from the record.

"The Court: I think it is objectionable what was said between the parties. The motion is sustained."

Although we find no cases in Ohio dealing with the admissibility of such statements in the circumstances here, the general and almost universal rule, including its modifications, which we approve and follow, is expressed in 40 Corpus Juris Secundum 1237, Homicide, Section 276:

"It has been laid down as a general rule that threats of deceased against accused are not admissible in evidence unless such threats were communicated to accused before the homicide, but there are important modifications of this rule. Thus in case the evidence leaves it doubtful as to whether or not the deceased was the aggressor in the difficulty in which the killing occurred as claimed by accused, evidence of threats of deceased

against accused, even though not communicated to him, *tends to show deceased's animus toward accused and bears on the probability of his having been the aggressor,* and hence is admissible for this purpose, and evidence of uncommunicated threats is also admissible when accompanied by proof of threats which have been communicated to accused, *as such evidence corroborates the communicated threats and tends to establish the reality of the peril in which accused considered himself to be at the time of the killing.* \* \* \*" (Emphasis added.)

An extensive annotation on this rule, its variations and applications, appears at 98 A. L. R. 2d 6. See, also, *Dickson* v. *State,* 39 Ohio St. 73, holding uncommunicated threats made *immediately* preceding the attack admissible as part of the *res gestae.*

The state argues that the exclusion of the evidence was not erroneous or prejudicial because (1) the jury heard the answers irrespective of the court's ruling, (2) the jury had for consideration communicated threats, (3) no foundation was laid as to when, where or who was present at the time of the conversation of Bowden with his wife, (4) the question asked Mrs. Debo was not as to a threat made immediately before the killing, and (5) no proffer was made as to any further answers to the questions.

Although the jury may have heard testimony indicative of what the answers would be, if permitted, and other testimony of actual threats, it would be apparent from the court's rulings made in the presense of the jury that the court considered the evidence incompetent and that the jury should not consider same.

The evidence of communicated threats did not preclude the admissibility of uncommunicated threats to show animus of the deceased toward accused, the probability of his aggression; and made it admissible to corroborate the communicated threats.

As to the laying of a foundation, more latitude is usually given on cross-examination than on direct, and it is apparent here that the objections here were not sustained for such reason and that the defense was cut off in its cross-exanination of Mrs. Bowden before a foundation could, in each case, be supplied. Moreover, the last question asked her refers to a foundation in the earlier part of her testimony. The court's conclusion

that the question was improper because the use of the word "threaten" calls for a conclusion is itself improper. The question was introductory in nature, and almost all testimony calls for conclusions of some sort. For instance, if a witness is asked what make of automobile he drives he must conclude before he answers that what he drives and names in his answer is an automobile. Likewise if asked, "What was the next question asked you?," he must distinguish and conclude what language addressed to him constitutes a question.

Next, under the rule hereinbefore quoted the threat to which Mrs. Debo was about to testify did not have to be made immediately before the killing.

Finally, proffer is made only to assist the reviewing court to determine the existence of prejudicial error and does not ordinarily apply to cross-examination for the reason that on cross-examination it is usually apparent what answer is expected. 3 Ohio Jurisprudence 2d 75, Appellate Review, Section 212. Here it is apparent that Mrs. Bowden would, if permitted, testify to actual threats and did so in answer to the last quoted question asked her before the objection was made and sustained. On the direct examination of Mrs. Debo sufficient of the answer was given to show what the answer would be had the court not ordered same stricken from the record.

We conclude that the court did commit error in excluding the testimony of uncommunicated threats, which was admissible under the rule hereinbefore quoted, and that such exclusion requires a new trial, for it may have been prejudicial to the accused. Section 2945.83 (C), Revised Code.

We have considered defendant's second assignment of error with reference to the admission of a demonstration photograph of the position of the defendant's car at the time of the shooting, and, if error (which we do not determine), the same was not prejudicial.

Defendant's third assignment of error relates to alleged misconduct of the prosecuting attorney in stating in the presence of the jury and in reference to Mrs. Debo's testifying before the grand jury that "there was a prior inconsistent statement," and that "I [the prosecuting attorney] assert she made a prior inconsistent statement." Such statements were obviously improper, being tantamount to testimony, and alluding to a

transcript which the defendant did not have available to him. Section 2939.11, Revised Code. We do not condone this conduct, but we cannot find that same constituted error prejudicial to the defendant, particularly when the defendant did not persist in obtaining a ruling from the trial court as to the conduct, or move for a mistrial, or request a ruling from the trial court that the jury be instructed to disregard such statements.

For the error of the Common Pleas Court in excluding evidence of uncommunicated threats made by the deceased with reference to the defendant, the judgment of the Common Pleas Court of Marion County is reversed and vacated and the cause is remanded to that court for new trial and further proceedings as provided by law.

*Judgment reversed.*

YOUNGER, P. J., GUERNSEY and MIDDLETON, JJ., concur.