JUDGMENT: DISMISSED
{¶ 1} Appellant Ashley Berger appeals her convictions for voluntary manslaughter, involuntary manslaughter, and aggravated assault. She assigns the following three errors for our review:
 "I. The honorable common pleas court erred when it precluded the appellant from testifying as to the threats made to her by the decedent."
 "II. The honorable common pleas court erred when it failed to instruct the jury that the appellant had no duty to retreat from her porch."
 "III. The honorable common pleas court erred when it failed to instruct the jury that the appellant had no duty to retreat when she acted in defense of her family."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Berger's convictions. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury indicted Berger on two counts of murder and four counts of felonious assault. The indictments arose from a confrontation between Berger and Christina Barkley, which ended when Berger stabbed Barkley's sister, Vanessa McMorick, in the chest, causing her death. She also stabbed Christina Barkley in her back shoulder.
 {¶ 4} The evidence at trial indicated that Berger and Barkley lived next door to each other on Crystal Avenue located in Euclid, Ohio. The Berger and Barkley families were in a state of constant feuding over problems concerning their children. The Euclid police received numerous complaints from both families in the four months proceeding the fatal altercation. Most of the complaints revolved around problems between the Berger and Barkley children. The incidents were of a nonviolent nature except for an incident that took place in February 2005, when Berger punched Christina Barkley in the face. Barkley did not press charges. The prosecutor instructed both women to stay away from each other.
 {¶ 5} On April 27, 2005, Berger's son told her that the Barkley children had teased him on his way home from the bus stop. As a result, Berger called Euclid police to file a complaint. When the police arrived, Christina Barkley was not at home. The police, therefore, spoke with Barkley's boyfriend who was watching the children. When Barkley arrived home, the boyfriend informed her concerning what had transpired. Barkley and McMorick were in the process of getting back into their vehicle, when Berger's boyfriend, Michael Marcenti exchanged words with them. As he did so, Barkley's teenage nephew interceded. The nephew and Marcenti engaged in a physical scuffle; Marcenti placed the teenager in a headlock.
 {¶ 6} Christina Barkley and McMorick attempted to pull the men apart. This prompted Berger's mother and Marcenti's mother to engage in the scuffle. Berger was watching the altercation. She stated when she saw her father, Marcenti, and Marcenti's mother get knocked down, she went into the house and retrieved a knife. She emerged from the house with the knife, and while waving it, she yelled, "Everyone get the [expletive] out of my yard!" Barkley and McMorick then ran towards her. Berger and her mother proceeded to engage in a scuffle with them. As they did so, Berger stabbed McMorick seven times, one of which entered McMorick's chest. Christina Barkley was stabbed in the back. The women were eventually pulled apart. At that point, the crowd realized McMorick had been seriously injured and the fighting ceased. McMorick was taken by EMS to the hospital where she later died. Barkley was treated and released.
 {¶ 7} Berger was arrested and transported to the Euclid Police Department. When the police told Berger about McMorick's death, she stated, "I didn't mean to do it."
 {¶ 8} The jury acquitted Berger of the murder counts, but found her guilty of the inferior offenses of voluntary manslaughter and involuntary manslaughter. The jury also acquitted Berger of the felonious assault counts, but found her guilty of the lesser included offense of aggravated assault respective to these counts. The trial court sentenced Berger to five years in prison.
 Victim's Threats {¶ 9} In her first assigned error, Berger contends the trial court erred by not permitting Berger to testify regarding the substance of the verbal threats made by Vanessa McMorick.
 {¶ 10} In State v. Debo[1] the court held "[i]t has been laid down as a general rule that threats of a deceased against the accused are not admissible in evidence unless such threats were communicated to the accused before the homicide, * * *."[2] Here, the alleged threats by McMorick, were made prior to Berger stabbing her. Therefore, Berger should have been allowed to testify regarding the substance of the threats.
 {¶ 11} The State argues the substance of the threats constitutes hearsay. However, as the court in State v. Goss[3] held in addressing a similar case, "[s]ince the statements were adduced to show the state of mind of the deceased or of the defendant rather than to prove the truth of the matter asserted therein, the statements were not subject to a hearsay objection." The court explained, "evidence of both communicated and uncommunicated threats by the deceased against the defendant are admissible as they bear upon the issue of who was the aggressor as well as the reality of defendant's peril at the time of the killing."[4]
 {¶ 12} The cases cited by the State are distinguishable from the instant case, because they concern statements made by the deceased victim, implicating the defendant.[5] Therefore, in those cases the statements were sought to be introduced to prove the truth of the matter. That is, that the defendant was the murderer. In the instant case, the statements were introduced to show Berger's state of mind.
 {¶ 13} Although we conclude the trial court erred, we find the error was not prejudicial because in spite of the trial court's ruling, Berger did testify regarding the substance of the threats made. She stated on cross-examination: "They came to me, they started attacking me, and I wasn't going to let them kick my baby out of me like they said,"[6]
and "I don't know what they are capable of. They're threatening to kick my baby out of me, they came on my porch."[7] She also stated that because of the threats made by McMorick, and Barkley, she was "scared that they were going to do something for me [to] lose my child because they were making threats."[8] Therefore, the jury was aware that both McMorick and Barkley were threatening to injure her unborn child.
 {¶ 14} Moreover, Berger's counsel was also permitted to argue during closing argument that Berger used the knife for protection because of the threats made regarding her unborn child; consequently, no prejudice occurred. Accordingly, Berger's first assigned error is overruled.
 Duty to Retreat Instruction {¶ 15} In her second assigned error, Berger contends the trial court erred by failing to instruct the jury that she did not have a duty to retreat into her home. The court in State v. Williford[9] held that:
 "Under Ohio law, self-defense is an affirmative defense. State v. Martin (1986), 21 Ohio St.3d 91, 21 OBR 386, 488 N.E.2d 166, affirmed Martin v. Ohio (1987), 480 U.S. 228. To establish self-defense, the defendant must show "* * * (1) * * * [he] was not at fault in creating the situation giving rise to the affray; (2) * * * [he] has [sic] a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of * * * force; and (3) * * * [he] must not have violated any duty to retreat or avoid the danger. * * *" State v. Robbins (1979), 58 Ohio St. 2d 74, 12 O.O. 3d 84, 388 N.E. 2d 755, paragraph two of the syllabus. "If the defendant fails to prove any one of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." State v. Jackson (1986), 22 Ohio St. 3d 281, 284, 22 OBR 452, 455, 490 N.E. 2d 893, 897, certiorari denied (1987), 480 U.S. 917."
 {¶ 16} In most circumstances, a person may not kill in self-defense if the person has available a reasonable means of retreat from the confrontation.[10] However, "where one is assaulted in his home, or the home itself is attacked, he may use such means as are necessary to repel the assailant from the house, or to prevent his forcible entry, or material injury to his home, even to the taking of life."[11] Implicit in this statement of law is the rule that there is no duty to retreat from one's home.[12]
 {¶ 17} We agree with Berger that the case law indicates that the "no duty to retreat" rule has been extended to the front porch of a home.[13] In the instant case, it is undisputed that no one was attacking Berger inside her home. However, there is conflicting testimony regarding where the attack occurred outside of the house. Berger testified the stabbing occurred while the women were on her front porch. However, the rest of the witnesses testified that the stabbing occurred in front of Berger's window by her front walkway, which is several feet from her porch. In fact, no blood was found on the porch. There was, however, a large blood stain on the walkway in front of the home, where the other witnesses alleged the stabbing occurred. Therefore, the preponderance of the evidence does not support Berger's contention that the stabbing occurred on the porch.
 {¶ 18} Moreover, even if the trial court did err by failing to give an instruction that Berger did not have a duty to retreat, she would still have not prevailed on her self-defense claim even if the instruction was given. The "elements of self-defense are cumulative. * * * If the defendant fails to prove any one of these elements by a preponderance of the evidence [she] has failed to demonstrate that [she] acted in self-defense."[14]
 {¶ 19} In the instant case, Berger exited her house and observed the struggle between the families. It was at that time, prior to any threat being issued by Barkley or McMorick, that Berger made the decision to retrieve a knife from the kitchen. There is no dispute that no one else had a weapon. When Berger commenced stabbing with the knife, McMorick, Barkley, and Berger were engaged in cussing, hair pulling, shoving, and punching. No one was exerting lethal force. Thus, Berger had no basis for a "bona fide belief that [she] was in imminent danger of death or great bodily harm" and could "escape from such danger" only by using deadly force. In addition, the jury's finding Berger guilty of involuntary manslaughter, voluntary manslaughter, and aggravated assault indicates they concluded Berger acted out of a sudden fit of rage instead of fear.[15]
 {¶ 20} In State v. Jackson,[16] the Ohio Supreme Court also concluded that the trial court erred by failing to instruct the jury that the defendant did not have a duty to retreat from his porch. However, the Court found the error was not prejudicial because the defendant did not satisfy the other requirements for self-defense. Likewise, in the instant case, because Berger did not satisfy the other elements of self-defense, the trial court's failure to instruct the jury that Berger did not have a duty to retreat from her porch, was not prejudicial error. Accordingly, Berger's second assigned error is overruled.
 Defense of Others Instruction {¶ 21} In her third assigned error, Berger contends the trial court erred by failing to instruct the jury that Berger did not have a duty to retreat when she was acting in defense of her family. We disagree.
 {¶ 22} "If a person in good faith and upon reasonable grounds believes that a family member is in imminent danger of death or serious bodily harm, such person may use reasonably necessary force to defend the family member to the same extent as the person would be entitled to use force in self-defense."[17]
 {¶ 23} In the instant case, the preponderance of the evidence indicates that Berger's family was not in "imminent danger of death or serious bodily harm." Although, there was a lot of cussing, shoving, pulling hair, and punching, no one was in serious danger. In fact, the only people seriously injured from the altercation were Barkley and McMorick. Also, the Berger family outnumbered the Barkley family. There were six adults in Berger's family involved in the altercation compared with two adults and one minor from Barkley's family. It is also undisputed that no one from the Barkley family had a weapon. Therefore, because the evidence did not support an instruction on defense of family, the trial court did not err by refusing to give such an instruction. Accordingly, Berger's third assigned error is overruled.
[1] (1966), 8 Ohio App.2d 325, 327-328.
[2] Id. at 327-328, quoting, 40 Corpus Juris Secundum 1237, Homicide, Section 276. See, also, State v. Randle (1980), 69 Ohio App.2d 71.
[3] (March 30, 1978), 10 Dist. No. No. 77AP-802.
[4] Id., citing State v. Debo, supra. See, also, State v. Fort (May 10, 1990), Cuyahoga App. No. 56922.
[5] State v. Collymore, Cuyahoga App. No. 81594, 2003-Ohio-3328;State v. Apanovitch (1987), 33 Ohio St.3d 19.
[6] Tr. at 991.
[7] Tr. at 996.
[8] Tr. at 949.
[9] (1990), 49 Ohio St.3d 247, 249.
[10] Jackson, supra, at 283-284; Robbins, supra, at 79-81; Marts v.State (1875), 26 Ohio St. 162, 167-168.
[11] State v. Peacock (1883), 40 Ohio St. 333, 334.
[12] See Jackson, supra, at 284.
[13] State v. Williford, supra; State v. Jackson, supra; City ofCleveland v. Krakowski (Aug. 17, 2000), Cuyahoga App. No. 76777;State v. Montgomery (April 30, 1999), 2nd Dist. No. 17203; State v.Morgan (June 10, 1998), 3rd Dist. No. 17-97-22; State v. Cole (Jan. 22, 1997), 1 Dist. No. C-950900; State v. Walton (Aug. 2, 1995), 9th Dist. No. 94CA005940; State v. Napier (1995),105 Ohio App.3d 713; State v. Copeland (April 13, 1993), 10th Dist. No. 92AP-1486.
[14] State v. Jackson, supra at 284.
[15] State v. Mack, 82 Ohio St.3d 198, 201, 1998-Ohio-375 ("fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage.")
[16] (1986), 22 Ohio St.3d 281.
[17] See State v. Williford, supra.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.