This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Rusty Rust, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} At approximately 12:50 a.m. on November 19, 2005, Appellant arrived at the Cheers Bar in Barberton, Ohio. Shortly thereafter, Appellant's girlfriend, Richelle Park, arrived at the bar accompanied by her friend, Elizabeth Schillig. The two women talked with Appellant as he shot pool. A few minutes later, Eric Walker and his friend Burton Gregory, the victim herein, arrived at the bar. Mr. Walker is engaged to Ms. Schillig. Mr. Walker owns a roofing company and has employed both Appellant and Mr. Gregory at various times. Appellant met Mr. Gregory while working for Mr. Walker.
 {¶ 3} Shortly after Mr. Walker arrived, he and Appellant began discussing a recent construction job. According to Ms. Schillig, she observed Mr. Gregory rolling a pool stick on the pool table in such manner that she believed Mr. Gregory was upset with Appellant. She then sat on the pool stick to prevent a confrontation. Soon thereafter, Mr. Gregory and Mr. Walker left the bar. After the two men left, Ms. Schillig approached Appellant and asked him whether he had a dispute with Mr. Gregory. Appellant denied any conflict with Mr. Gregory. She then explained that she had observed Mr. Gregory twirling the pool stick in such a manner that he appeared angry with Appellant. Upon hearing that Mr. Gregory was angry with him, Appellant immediately left the bar with Ms. Park and proceeded home.
 {¶ 4} Appellant then called Mr. Walker and asked to speak with Mr. Gregory. Appellant asked Mr. Gregory whether he planned to assault him with the pool stick. Mr. Gregory told Appellant that he did not intend to hit him with the pool stick. The two men exchanged curse words during this conversation. Mr. Walker and Mr. Gregory drove to Appellant's house in Mr. Walker's car. Mr. Walker parked the car across the street from Appellant's house. The two men contend that when they arrived at Appellant's house, he was standing in his front yard, carrying an aluminum baseball bat. Appellant contends that he came out to the front yard after hearing Mr. Gregory curse and yell at him to come outside. Appellant claims that he took an aluminum bat with him because he feared Mr. Gregory. Appellant testified that he knew from his work experience with Mr. Gregory that Mr. Gregory carried a weapon.
 {¶ 5} A fight ensued between Mr. Gregory and Appellant wherein Appellant struck Mr. Gregory with a baseball bat at least two times. Mr. Gregory suffered severe injuries as a result of the altercation including broken ribs, a collapsed lung and damage to his liver.
 {¶ 6} Appellant was charged with one count of felonious assault, in violation of R.C. 2903.11(A)(1)/(A)(2), a felony of the second degree. Appellant pled not guilty and the case proceeded to trial before a jury. In March of 2006, Appellant was convicted of felonious assault and sentenced to four years incarceration. Appellant filed a timely notice of appeal, raising five assignments of error for our review. To facilitate our review, we have combined several of Appellant's assigned errors.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN FAILING TO GIVE THE JURY A SELF DEFENSE JURY INSTRUCTION. THE TRIAL COURT'S FAILURE TO GIVE A SELF DEFENSE JURY INSTRUCTION DENIED[APPELLANT] HIS CONSTITUTIONAL RIGHT TO PRESENT A COMPLETE DEFENSE AS GUARANTEED UNDER SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 7} In his first assignment of error, Appellant contends that the trial court erred in failing to give the jury a self-defense instruction. We disagree.
 {¶ 8} Generally, a trial court should give the requested instructions if they are correct statements of law applicable to the facts of the case, and reasonable minds may reach the conclusion sought. State v.Mills, 9th Dist. Nos. 02CA0037-M, 02CA0038-M, 2002-Ohio-7323, at ¶ 40. "When considering whether a trial court should have provided a requested jury instruction, an appellate court views the instructions as a whole." Id. at ¶ 39.
 {¶ 9} An appellate court respects the trial court's judgment on issues of jury instructions absent an abuse of discretion. Id. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. An appellate court may not substitute its judgment for that of the trial court. Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 10} "Self-defense is an affirmative defense under Ohio law."State v. Coleman, 6th Dist. No. S-02-041, 2005-Ohio-318, at ¶ 14. To establish a general claim of self-defense, the defendant must demonstrate:
 "(1) that he was not at fault in creating the situation giving rise to the affray, (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of deadly force, and (3) that he did not violate any duty to retreat or avoid the danger." State v. Caldwell (1992), 79 Ohio App.3d 667, 679.
"'The proper standard for determining in a criminal case whether a defendant has successfully raised an affirmative defense under R.C.2901.05 is to inquire whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue.'"Coleman, supra, quoting State v. Melchior (1978), 56 Ohio St.2d 15, paragraph one of the syllabus.
 {¶ 11} At trial, Appellant argued that a self-defense instruction was appropriate because (1) he was not the aggressor, (2) he was not at fault for creating the situation which led to the fight, (3) he had both a subjective and an objective belief that great physical harm was imminent, (4) he was protecting himself and his family and (5) he twice attempted to retreat.
 {¶ 12} The trial court denied the request, ruling that
 "Now, during the opening statements of counsel, which I have indicated to you are not evidence, the defense counsel made reference to self-defense. Self-defense is a specific legal requirement that must be proven by a defendant, but it can only be entered into law if certain requirements are met. Self-defense does not apply to the facts of this case. You are not to consider or to discuss self-defense. It is not available as a defense in this case."
Appellant timely objected to the trial court's failure to give a self-defense instruction. In overruling Appellant's objection, the trial court explained:
 "Court notes that the evidence is that the victim in this case called him out. There was no evidence that the house was attacked, that he made an attempt to enter the house or to indicate any threats to those in the house and the court finds that defense not available."
 {¶ 13} Upon review of the evidence, we find that there was insufficient evidence to raise a question in the minds of reasonable men as to whether Appellant acted justifiably in self-defense. Failure to prove any of the three elements of self-defense by a preponderance of the evidence is fatal. State v. Berger, 8th Dist. No. 87603,2006-Ohio-6583, at ¶ 18. Appellant failed to establish that "he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of deadly force" at the time he struck Mr. Gregory with the baseball bat.Caldwell, 79 Ohio App.3d at 679. Appellant argues that he feared Mr. Gregory because he knew Mr. Gregory always carried a weapon. However, Appellant did not testify that he observed Mr. Gregory carrying a weapon on the day of the incident or reasonably believed that Mr. Gregory was carrying a weapon at the time of the incident. Appellant further contends that he feared for his life because once Mr. Gregory arrived in Appellant's front yard, he threatened to kill Appellant.
 {¶ 14} Appellant's testimony on cross-examination reflects that he could have avoided any dangerous situation with Mr. Gregory and Mr. Walker. Appellant testified that he left the safety of his house to confront Mr. Gregory and Mr. Walker instead of remaining in his home and seeking the protection of the police:
 "Q. And there's a big question that I have.
 "A. Yes, ma'am.
 "Q. Why didn't you just stay in your house?
 "A. My kids woke up and I didn't know why he was there. And that's why I asked him why he was there.
 "Q. Why didn't you just call the police while you were inside of your house?
 "A. I actually had yelled for my mother to call the police.
 "Q. And why didn't you wait inside your house until the police were there?
 "A. It happened so fast that it was over in a blink of an eye anyway, either way.
 "Q. So you want us to believe you were so scared that you had to leave your house to go down there and confront him with this bat?
 "A. I did confront him with the bat.
 "Q. You were so scared that you had to leave your house with the bat, correct? That's what you want us to believe?
 "A. I was scared for my family."
 {¶ 15} Furthermore, Appellant has failed to demonstrate that he was in imminent danger of death or great bodily harm when he struck Mr. Gregory with the bat and that his only means of escape from such danger was the use of deadly force. See, Berger, supra; State v. Lee (Oct. 26, 1989), 8th Dist. No. 56033 (the act of striking someone with a baseball bat constitutes deadly force). Appellant testified that he hit Mr. Gregory after Mr. Gregory brushed the back of his shirt:
 "Q. And then what happened?
 "A. * * * So I had turned to walk away and I could hear Burt coming.
 "Q. And when you turned, how far away from you was he?
 "A. Well, he was right there at me. He actually just brushed, brushed the back of my shirt.
 "Q. Then what happened?
 "A. I turned — I turned and hit him.
 "Q. How many times?
 "A. I had hit him — first time I swung, I hit him. The bat off of him [sic] and hit him in his side.
 "Q. Did Mr. Gregory stop at that time?
 "A. No. I was surprised. I thought he would and he didn't.
 "Q. What did you do? What did you do after the initial strike?
 "A. I turned to go again, because I got scared even more. Just more of a panic had kicked in.
 "Q. Then what happened?
 "A. He just reached for me again, and I hit him again.
 "Q. You hit him two times; is that correct? Is that what your testimony is?
 "A. Yes."
 {¶ 16} First and foremost, Appellant could have avoided any confrontation with Mr. Gregory and Mr. Walker by remaining in his house and seeking police protection. Instead, Appellant chose to leave his house and confront Mr. Gregory and Mr. Walker in his front yard, while wielding an aluminum bat. Secondly, Mr. Gregory's act of brushing Appellant's shirt does not justify Appellant's response of deadly force. Consequently, we find no abuse of discretion in the trial court's decision not to instruct the jury on self-defense. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "[APPELLANT'S] CONVICTION FOR FELONIOUS ASSAULT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEEN [SIC] AMENDMENTS TO THE FEDERAL CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."
 ASSIGNMENT OF ERROR III "[APPELLANT'S] CONVICTIONS [SIC] FOR FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED TO [APPELLANT'S] PREJUDICE BY DENYING [APPELLANT'S] CRIMINAL RULE 29 MOTION FOR ACQUITTAL AT THE CLOSE OF THE STATE'S CASE AND AGAIN AT THE CONCLUSION OF ALL THE EVIDENCE WHERE THE STATE OF THE EVIDENCE WAS SUCH THAT REASONABLE MINDS COULD NOT FAIL TO FIND REASONABLE DOUBT AND [APPELLANT'S] CONVICTIONS [SIC] WERE NOT SUPPORTED BY THE TESTIMONY AND EVIDENCE PRESENTED."
 {¶ 17} In Appellant's second, third, and fourth assignments of error, he contends that insufficient evidence was produced to support the jury's verdict and that his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 18} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 19} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Therefore, we will address Appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of Appellant's claim of insufficiency.
 {¶ 20} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 21} Appellant was convicted of felonious assault, in violation of R.C. 2903.11(A)(1)/(A)(2), which prohibits a person from knowingly "(1) [c]aus[ing] serious physical harm to another or to another's unborn" or "(2) [c]aus[ing] or attempting] to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 22} Appellant first argues that the verdict was against the manifest weight of the evidence because he acted in self-defense. In light of our finding under Appellant's first assignment of error that Appellant did not successfully raise the affirmative defense of self-defense, we need not further address this contention. Appellant next contends that the State failed to prove that he knowingly caused physical harm to Mr. Gregory. As further explained herein, we find no merit in this contention.
 {¶ 23} Mr. Gregory testified at trial as follows. When he arrived at Appellant's house, Appellant was carrying a bat. He told Appellant to put the bat down. He never took a swing at Appellant nor moved towards Appellant as if he planned to take a swing at him. In addition, Mr. Gregory "never pulled anything out." He cursed at Appellant and called Appellant a name for wielding the bat. According to Mr. Gregory, he was pointing his hand towards Appellant at this time, while yelling at him to "put the damn bat down[.]" Appellant then "swang [sic] [the bat] and it hit [Mr. Gregory] in the side[.]" The initial hit knocked the wind out of Mr. Gregory. Appellant then hit Mr. Gregory on the head with the bat. According to Mr. Gregory, the force of this blow caused him to fall down. While Mr. Gregory was rolling on the ground in pain, Appellant continued to hit him with the bat.
 {¶ 24} Mr. Gregory's testimony is largely consistent with Appellant's recitation of the facts Appellant testified that he and Mr. Gregory were yelling at each other for about thirty seconds. Appellant testified that he turned to walk away and Mr. Gregory "brushed the back of my shirt." In response, Appellant turned and hit Mr. Gregory in the side with the bat. Appellant further testified that Mr. Gregory then reached for Appellant and Appellant again hit Mr. Gregory with the bat.
 {¶ 25} Upon review of the evidence, we find that the State established that Appellant knowingly caused physical harm to Mr. Gregory with a deadly weapon. Appellant does not dispute that the act of striking someone with a baseball bat constitutes deadly force. See Lee, supra. Furthermore, he does not dispute that he struck Mr. Gregory with the bat at least two times. In light of this undisputed evidence, we find that Appellant knowingly caused physical harm to Mr. Gregory. Accordingly, we find that Appellant's conviction is supported by the manifest weight of the evidence. As this Court has disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency. Roberts, supra, at *2. Accordingly, Appellant's second, third and fourth assignments of error are overruled.
 ASSIGNMENT OF ERROR V "THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING A CRIMINAL RULE PLEA NEGOTIATION ON THE DAY OF TRIAL."
 {¶ 26} In Appellant's fifth assignment of error, he contends that the trial court erred in and/or abused its discretion by refusing to accept a negotiated plea on the morning of trial. We disagree.
 {¶ 27} According to the prosecution's statements on the record on the day of trial, the State had offered to amend the felonious assault charge to an aggravated assault charge at the pretrial.[1] Appellant declined the offered plea. When Appellant appeared in court on the day of trial he stated that he wanted to accept the prosecutor's plea bargain. The court denied Appellant's request, stating that it would not accept his guilty plea to a lesser offense on the day of trial. However, the court also informed Appellant that it would accept a guilty plea to the indictment on the day of trial.
 {¶ 28} In State v. Stephenson (Apr. 30, 1997), 9th Dist. No. 17752, this Court reviewed a similar challenge to the trial court's refusal to accept a plea because the court's "plea deadline" had passed. In that case, we reiterated that the trial court has discretion to accept a plea bargain. Id. at *2. See Akron v. Ragsdale (1978), 61 Ohio App.2d 107,109. We explained that the trial court should state its reasons for rejecting a recommended plea bargain. Id.
 {¶ 29} The trial court was not required to accept Appellant's plea at that time. Id. Furthermore, the court stated its reasons for rejecting the plea bargain. Appellant has cited no authority for the proposition that the trial court abused its discretion in rejecting the plea bargain. Consequently, we find no abuse of discretion in the trial court's decision to reject the negotiated plea. Appellant's fifth assignment of error is overruled.
 III. {¶ 30} Appellant's assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
SLABY, P. J., BOYLE, J., CONCUR
[1] At trial, the prosecution stated that the pretrial conversation regarding the State's initial plea offer was recorded. However, this transcript is not contained in the record on appeal.