DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, William Skinner, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} In late December of 2005, Appellant, William Skinner ("Skinner"), his girlfriend and their daughter traveled from their home in Texas to Skinner's mother's home in Avon, Ohio for Christmas. Skinner's mother, Sherry Slowikowski, resided in Avon with her husband, Stanley Slowikowski, and their four children. Mrs. Slowikowski's other adult-aged son, Corey Cally, was also present at her home for Christmas. *Page 2 
 {¶ 3} On December 26, 2005, Skinner, his girlfriend and Mr. Slowikowski went to a local bar for dinner and drinks. All three consumed alcohol. The three returned to the Slowikowskis' home later that night. Shortly after arriving home, Mr. and Mrs. Slowikowski began arguing about Corey. The argument began in the family room of the home and continued into the home office. Mr. and Mrs. Slowikowski continued shouting at one another once they entered the office. The office had glass doors which locked from the inside. At some point during the argument, one of them closed the door. Skinner witnessed his mother and stepfather arguing and attempted to gain entry into the office. Skinner had a difficult time opening the door because the knob was adorned with a childproof cap and the door may also have been locked. At some point, Skinner began to bang on the door. Mr. Slowikowski eventually opened the door. As soon as he opened the door, Skinner reached in and struck him on the side of the head causing a serious laceration. In response, Mr. Slowikowski grabbed Skinner by the neck and pushed him against a wall. Skinner then stabbed Mr. Slowikowski in the eye with a knife, slashing his eye lid. Both Mr. and Mrs. Slowikowski called 911.
 {¶ 4} When the police arrived and attempted to talk with Skinner, he ran from them. A chase ensued with the police following Skinner through the dark, cold night through muddy, wooded terrain. The police chased Skinner through a waist-deep creek, finally apprehending him as he hid by some trees. *Page 3 
 {¶ 5} Skinner was arrested on December 26, 2005. On February 9, 2006, Skinner was indicted on one count of felonious assault, in violation of R.C. 2903.11, a felony of the second degree; one count of domestic violence, in violation of R.C. 2919.25, a misdemeanor of the first degree; one count of obstructing official business, in violation of R.C.2921.31, a felony of the fifth degree; and one count of resisting arrest, in violation of R.C. 2921.33, a misdemeanor of the second degree. The resisting arrest charge was dismissed prior to trial. Skinner waived his right to a jury trial and proceeded to a bench trial on June 1, 2006. At trial, Skinner raised the affirmative defenses of self-defense and defense of others. The trial court convicted Skinner on all three counts. Skinner was sentenced to six years incarceration on count one, four months incarceration on count two and eight months incarceration on count three. All sentences were to be served concurrently. Skinner was also sentenced to three years of post-release control. Skinner timely appealed, raising six assignments of error for our review. We have rearranged Skinner's assignments of error to facilitate our review.
 II. ASSIGNMENT OF ERROR III *Page 4 "THERE WAS INSUFFICIENT EVIDENCE OF A `RISK OF PHYSICAL HARM' TO JUSTIFY A FELONY CONVICTION FOR OBSTRUCTION OF OFFICIAL BUSINESS."
 ASSIGNMENT OF ERROR IV "THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 {¶ 6} In his third and fourth assignments of error, Skinner argues that the State produced insufficient evidence of risk of physical harm to support his conviction for obstruction of official business and that all of his convictions were against the manifest weight of the evidence. This Court disagrees.
 {¶ 7} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 8} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further, *Page 5 
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Therefore, we will address Skinner's claim that his convictions were against the manifest weight of the evidence first, as it is dispositive of Skinner's claim of insufficiency.
 {¶ 9} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 10} Skinner was convicted of one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree; one count of domestic violence, in violation of R.C. 2919.25, a misdemeanor of the first degree; and one count of obstructing official business, in violation of R.C. 2921.31(A), a felony of the fifth degree.
 Felonious Assault and Domestic Violence *Page 6 
 {¶ 11} R.C. 2903.11(A)(1) governs felonious assault and provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn[.]" R.C. 2919.25 proscribes domestic violence and provides, in pertinent part:
 "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 "(B) No person shall recklessly cause serious physical harm to a family or household member."
 {¶ 12} The State presented eleven witnesses at trial including Mr. and Mrs. Slowikowski. Skinner did not testify and presented no witnesses on his behalf.
 {¶ 13} Mr. Slowikowski testified regarding his altercation with Skinner. According to Mr. Slowikowski, the only physical interaction between him and his wife during their argument in the office occurred when she put her finger on his nose and he knocked her finger away with his hand. At that point, Mrs. Slowikowski started to say "`don't hit me[.]'" Shortly thereafter, Mr. Slowikowski noticed Skinner trying to open the door to the office. Mr. Slowikowski did not want Skinner to break the door, so he held the door so that Skinner could not break the door. Skinner opened the door wide enough to strike Mr. Slowikowski on the head. Mr. Slowikowski then opened the door and let Skinner in to the office. Mr. Slowikowski was a bit unclear about the remaining details of the altercation. He and Skinner began scuffling and at some point, he grabbed Skinner by the throat to control him. Skinner then struck Mr. *Page 7 
Slowikowski in the eye with a sharp object. Mr. Slowikowski then proceeded to the bathroom. Observing the blood loss, he called the police. Mr. Slowikowski was transported by ambulance to the hospital where he was treated. He suffered severe injury to his eye, resulting in one hundred percent loss of vision in that eye. He also suffered a severe laceration to the side of his head. Mr. Slowikowski testified that his wife later informed him that Skinner had cut him with a pocket knife.
 {¶ 14} Dr. Donald Stephens, the Director of the Vitreoretinal Division and Ocular Trauma Service at MetroHealth Medical Center testified regarding the surgery he performed on Mr. Slowikowski's eye. Dr. Stephens testified that Mr. Slowikowski's eye was lacerated with a sharp object that had to be "knife-like in its consistency because it would have to have had sharpness on two edges and been thin like a knife."
 {¶ 15} Sherry Slowikowski also testified regarding the altercation. Mrs. Slowikowski testified that shortly after her husband, Skinner and his girlfriend arrived home from the bar, she and her husband began arguing about Corey. The argument began when Mr. Slowikowski approached Mrs. Slowikowski who was sitting in the family room with Skinner and his daughter. Mrs. Slowikowski testified that her husband was being "very belligerent" and that he was pointing his finger at her. Mr. Slowikowski then walked into the office area of the house. Mrs. Slowikowski followed him. They continued the argument in the office. Mrs. *Page 8 
Slowikowski admonished her husband for pointing his finger at her. She then put her finger in his face. Mr. Slowikowski "slapped" it out of the way. Mrs. Slowikowski told him "don't get stupid and hit me[.]" When Mrs. Slowikowski turned to leave the room, Mr. Slowikowski jumped up and closed and locked the door. Mrs. Slowikowski began yelling at him to let her out. Shortly thereafter, she heard Skinner at the door. Skinner was yelling "`don't hit my mom.'" Because of the way she was standing, Mrs. Slowikowski could not see Skinner and she did not think that he could see her either. Mrs. Slowikowski observed her husband open the door, pull Skinner into the room and throw him up against the wall. Mrs. Slowikowski tried to get her husband to release his grip on Skinner's throat. She testified that the next thing she saw was Skinner's hand slip out of Mr. Slowikowski's grip and hit her husband in the eye. Mrs. Slowikowski testified that she did not see the knife in Skinner's hand. She later learned that Skinner wielded a knife during the altercation.
 {¶ 16} Detective Kevin Krugman with the Avon Police Department testified regarding his follow-up investigation of the incident. Approximately a week after the incident, Detective Krugman visited the Slowikowskis' home. He took photographs of Mr. Slowikowski's injuries and interviewed the Slowikowskis. Both Mr. and Mrs. Slowikowski told Detective Krugman that Skinner carried a deer-skinning knife with him and that they had not located the knife. *Page 9 
 {¶ 17} Upon review, we find that the evidence presented by the State establishes the elements of both felonious assault and domestic violence. No one disputes that Skinner knowingly caused serious physical harm to Mr. Slowikowski with whom Skinner resided from the time he was approximately 11 years old until he was approximately 20 years old. See R.C. 2919.25(F)(1)(a) (providing that family or household member includes "[a]ny of the following who is residing or has resided with the offender: * * * (ii) [a] parent or a child of the offender, or another person related by consanguinity or affinity to the offender; (iii) [a] parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender").
 {¶ 18} We also find that Skinner's affirmative defenses fail. "Self-defense is an affirmative defense under Ohio law." State v.Coleman, 6th Dist. No. S-02-041, 2005-Ohio-318, at ¶ 14. To establish a general claim of self-defense, the defendant must demonstrate:
 "(1) that he was not at fault in creating the situation giving rise to the affray, (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of deadly force, and (3) that he did not violate any duty to retreat or avoid the danger." State v. Caldwell (1992), 79 Ohio App.3d 667, 679.
"`The proper standard for determining in a criminal case whether a defendant has successfully raised an affirmative defense under R.C.2901.05 is to inquire whether the defendant has introduced sufficient evidence, which, if believed, *Page 10 
would raise a question in the minds of reasonable men concerning the existence of such issue.'" Coleman, supra, quoting State v.Melchior (1978), 56 Ohio St.2d 15, paragraph one of the syllabus. Failure to prove any of the three elements of self-defense by a preponderance of the evidence is fatal. State v. Berger, 8th Dist. No. 87603, 2006-Ohio-6583, at ¶ 18.
 {¶ 19} Self-defense only applies to the injury Skinner afflicted on Mr. Slowikowski's eye. Skinner committed the first assault when he struck Mr. Slowikowski on the head. Mr. Slowikowski responded by grabbing Skinner around the neck. Skinner cut Mr. Slowikowski's eye in response. Skinner failed to establish that "he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of deadly force" at the time he stabbed Mr. Slowikowski in the eye with his knife.Caldwell, 79 Ohio App.3d at 679. See, State v. Sims, 8th Dist. No 85608,2005-Ohio-5846, at ¶ 17 (the act of stabbing someone with a knife constitutes deadly force). Skinner responded to Mr. Slowikowski's act with greater force than permitted. See State v. Wilson (Apr. 30, 1986), 9th Dist. No. 12395, at *1 ("[w]hen one uses greater force than is necessary under all the circumstances, as, for example, where the defendant lacks bona fide belief as to his imminent peril, it is not justifiable as self defense").
 {¶ 20} Skinner has similarly failed to establish the elements of defense of others. Pursuant to the defense of others doctrine, a person has a privilege to *Page 11 
defend family members to the same extent he is entitled to protect himself State v. Williford (1990), 49 Ohio St.3d 247, 250. Although the Slowikowskis engaged in a heated shouting match and Mr. Slowikowski slapped Mrs. Slowikowski's hand away from his face, the record reflects no evidence that Mr. Slowikowski threatened to harm his wife nor that he physically harmed his wife.
Obstruction of Official Business
 {¶ 21} Joshua Stell, an officer with the Avon Police Department, also testified. Officer Stell responded to the Slowikowskis' home to investigate the 911 calls. While in route, Officer Stell received a call from the other two officers that had responded to the scene informing him that the suspect was running from them. The two other officers eventually caught the suspect. When Officer Stell arrived at the Slowikowskis' home, Mrs. Slowikowski told him what had occurred. Officer Stell testified that the injuries Mr. Slowikowski suffered were so severe that they could not have been caused by a fist.
 {¶ 22} Brian Tackett, also an officer with the Avon Police Department, testified regarding his response to the Slowikowskis' home on December 26, 2005. Officer Tackett responded to the scene at the same time as Avon Police Officer Norm Elias. Officer Tackett testified that when he arrived at the Slowikowskis' home, he observed Skinner standing in the driveway. The officers notified Skinner several times that they were with the police department and that they needed to speak with him. As the officers moved closer to Skinner, Skinner *Page 12 
ran from them. The officers repeatedly told Skinner to stop running from them. Skinner did not comply. The officers pursued Skinner as he ran through the backyard of the Slowikowskis' home and jumped into a creek. The officers pursued Skinner through the waist-deep water of the creek, finally catching up with him when he tried to hide behind some small trees and bushes. Officer Tackett estimated that the pursuit lasted approximately two minutes. Officer Tackett testified that it was an extremely cold night and that the ground was muddy. He stated that it would have been easy to twist an ankle during the pursuit. He recalled that the terrain was covered in briars, prickles and trees.
 {¶ 23} R.C. 2921.31 proscribes obstructing official business and provides, in pertinent part:
 "(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.
 "(B) Whoever violates this section is guilty of obstructing official business. * * * If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree."
 {¶ 24} "The affirmative act of running from an officer impedes or hinders the performance of an officer's lawful duty." State v.Sanders, 9th Dist. No. 23504, 2007-Ohio-2898, at ¶ 21, citing State v.Brickner-Latham, 3d Dist. No. 13-05-26, 2006-Ohio-609, at ¶ 27. In the instant matter, Officer Tackett testified that he witnessed Skinner run through the yard and into a waste-deep creek after the *Page 13 
officers announced their presence. The officers chased Skinner through the dark, wooded terrain. It was an extremely cold night and the terrain was especially treacherous because it was muddy and covered in briars, prickles and trees. Officer Tackett testified that it would have been easy to twist an ankle during the pursuit. In addition, Officer Tackett testified that when the officers apprehended Skinner, Skinner was hiding near some trees and bushes. Accordingly, the undisputed evidence demonstrated that Skinner ran from the officers and hid near some trees and that Skinner created a risk of physical harm to the officers. The trial court, therefore, did not lose its way in finding that Skinner had performed an act which hindered the officers' official duties and created a risk of harm to the officers.
 {¶ 25} Accordingly, Skinner's third and fourth assignments of error are overruled.
 ASSIGNMENT OF ERROR I "THE TRIAL COURT DENIED [SKINNER] DUE PROCESS OF LAW WHEN IT DECIDED COUNT ONE UNDER AN INCORRECT UNDERSTANDING REGARDING THE AFFIRMATIVE DEFENSES OF DEFENSE OF SELF AND DEFENSE OF ANOTHER, AND THE INFERIOR OFFENSE OF AGGRAVATED ASSAULT."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT DENIED [SKINNER] DUE PROCESS OF LAW WHEN IT DECIDED COUNT TWO UNDER AN INCORRECT UNDERSTANDING REGARDING THE AFFIRMATIVE DEFENSES OF DEFENSES OF SELF AND DEFENSE OF ANOTHER." *Page 14 
 ASSIGNMENT OF ERROR V "THE TRIAL COURT IMPROPERLY CONSIDERED UNCHARGED ACTS OF [SKINNER'S] FAMILY MEMBERS AS AN AGGRAVATING CIRCUMSTANCE JUSTIFYING THE SENTENCE IMPOSED UPON [SKINNER]."
 {¶ 26} In his first and second assignments of error, Skinner contends that the trial court denied him due process when it decided counts one and two under an incorrect understanding regarding the affirmative defenses of defense of self and defense of another and the inferior offense of aggravated assault. In his fifth assignment of error, Skinner contends that the trial court improperly considered uncharged acts of his family members as an aggravating circumstance justifying the sentence imposed.
 {¶ 27} Pursuant to Crim.R. 23, because Skinner's case was tried without a jury, the court was permitted to make a general finding. The court had no obligation to provide specific findings regarding its verdict. Nonetheless, the record reflects that the trial court made specific findings. Initially, we note that Skinner did not object at his trial to the court's decision regarding his affirmative defenses. In addition, Skinner did not object to the trial court's alleged consideration of uncharged acts of his family members as aggravating circumstances justifying his sentence.
 {¶ 28} The Ohio Supreme Court has "long recognized, in civil as well as criminal cases, that failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal." *Page 15 Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121. However, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court[.]" Id., quoting Crim.R. 52(B). We must note the distinction between the waiver of an objection and the forfeiture of an objection. Although the terms are frequently used interchangeably,
 "`[w]aiver is the intentional relinquishment or abandonment of a right, and waiver of a right cannot form the basis of any claimed error under Crim.R. 52(B). On the other hand, forfeiture is a failure to preserve an objection[.] * * * [A] mere forfeiture does not extinguish a claim of plain error under Crim.R. 52(B).'" (Internal citations and quotations omitted.) State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 23.
Therefore, where a party has forfeited an objection by failing to raise it, the objection may still be assigned as error on appeal if a showing of plain error is made. State v. Hairston, 9th Dist. No. 05CA008768,2006-Ohio-4925, at ¶ 9; Crim.R. 52(B). However, Skinner has neither argued plain error, nor has he explained why we should delve into these issues for the first time on appeal. Moreover, in our disposition of Skinner's third and fourth assignments of error, we found that his convictions were supported by the manifest weight of the evidence. Accordingly, we decline to address these issues. Skinner's first, second and fifth assignments of error are overruled.
 ASSIGNMENT OF ERROR VI "THE TRIAL COURT ERRONEOUSLY IMPOSED A SENTENCE THAT VIOLATED BLAKELY V. WASHINGTON (2004), 542 U.S. 296, AND ITS PROGENY BECAUSE IT *Page 16 
IMPOSED A SENTENCE EXCEEDING MINIMUM AND CONCURRENT TERMS OF IMPRISONMENT."
 {¶ 29} In his sixth assignment of error, Skinner contends that the trial court erroneously imposed a sentence that violated Blakely v.Washington (2004), 542 U.S. 296, and its progeny because the trial court imposed a sentence exceeding minimum and concurrent terms of imprisonment.
 {¶ 30} A review of the record reflects that Skinner never challenged the constitutionality of Ohio's statutes in the trial court. InState v. Dudukovich, 9th Dist. No. 05CA008729, 2006-Ohio-1309, we held that a defendant must raise the constitutionality of Ohio's sentencing statutes in order to preserve the argument, including an argument underFoster, on appeal. See State v. Metz, 9th Dist. No. 22763,2006-Ohio-1551, at ¶ 9-10; State v. Duffield, 9th Dist. No. 22634,2006-Ohio-1823, at ¶ 72-74. The Ohio Supreme Court recently adopted this approach in State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642.
 {¶ 31} The record shows that Skinner was sentenced well afterBlakely was decided. As Skinner failed to raise any objection to his sentence in the trial court and specifically failed to challenge the constitutionality of Ohio's sentencing statutes, he is precluded from raising this argument for the first time on appeal. In addition, as Skinner has not alleged that the trial court committed plain error in his sentencing, we decline to address the issue.
 {¶ 32} Skinner's sixth assignment of error is overruled.
 III. *Page 17 {¶ 33} Skinner's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 CARR, J. WHITMORE, P. J. CONCUR
 *Page 1