[Cite as *State v. Behlke*, 2017-Ohio-7910.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

v.

KYLE M. BEHLKE

    Appellant

C.A. No.    16AP0068

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE No.    2016 CR-B 000710

DECISION AND JOURNAL ENTRY

Dated: September 29, 2017

SCHAFER, Presiding Judge.

{¶1} Defendant-Appellant, Kyle M. Behlke, appeals the judgment of the Wayne County Municipal Court convicting him on one count of domestic violence. We affirm.

I.

{¶2} Behlke was charged with one count of domestic violence in violation of R.C. 2919.25(A), a first degree misdemeanor. The charge stems from an incident that took place in Behlke's home on May 22, 2016. Behlke became angry with his then fourteen-year-old son, B.B., when he found B.B. at a neighbor's residence across the street from their home around midnight. Behlke ordered B.B. to return home. Once Behlke and B.B. arrived back at the home, Behlke grew increasingly frustrated with B.B and a physical altercation ensued. During the incident a neighbor knocked at the door of Behlke's home. B.B. then ran from the home and, at that point, Behlke told the neighbor to call the police.

**{¶3}** The matter proceeded to a bench trial on July 18, 2016. At trial, B.B. and Officer Dustin Burnett of the City of Wooster Police Department testified for the State. Behlke testified in his own defense. On July 28, 2016, the trial judge found Behlke guilty of domestic violence. On September 22, 2016, after a pre-sentence investigation, Behlke was sentenced to 90 days in jail, 36 months of probation, $100 fine plus court costs, 100 hours of community service, and was ordered to complete an alcohol assessment and the "Another Way" program. The trial judge also ordered Behlke to have no contact with B.B. until further order, and ordered that Behlke shall not use or possess alcohol or be in any places where alcohol is served.

**{¶4}** Behlke timely filed this appeal and presents one assignment of error for our review.

II.

## Assignment of Error

**Mr. Behlke's conviction was against the manifest weight of the evidence because the evidence did not support that he intended to cause harm to his son.**

**{¶5}** In his sole assignment of error, Behlke argues that his conviction for domestic violence is against the manifest weight of the evidence. Behlke only challenges the evidence as it relates to the "physical harm" element of domestic violence. In this challenge, Behlke asserts the testimony and evidence that "B.B. had no injury" cannot be resolved in favor of a finding that "Behlke knowingly caused or attempted to cause physical harm to B.B." Behlke argues that the weight of the evidence establishes that "he only meant to scare B.B. and get his attention following a long history of disobedience." We disagree.

**{¶6}** If a defendant asserts that a conviction is against the manifest weight of the evidence, we are required to consider the whole record, "weigh the evidence and all reasonable

inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court * * * disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence and grant a new trial only in the exceptional case in which the evidence weighs heavily against the conviction. *Otten* at 340.

{¶7} Behlke was convicted under R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." There is no dispute that B.B. resides with Behlke and is Behlke's son. Behlke contends that B.B. suffered no injury and that Behlke did not cause or attempt to cause B.B. any physical harm. Thus, the question is whether the evidence properly persuaded the trier of fact to find that Behlke knowingly caused or attempted to cause harm to B.B. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶8} B.B. testified that he was disobedient the day leading up to the incident. B.B. acknowledged that Behlke was upset with his behavior and the fact that B.B. was across the street at a neighbor's house near midnight. When Behlke approached him at the neighbor's

house, B.B. observed that Behlke was angry and appeared a little intoxicated. B.B. was aware that Behlke had been drinking that day. Behlke told B.B. "get your ass home, now."

{¶9} At home, B.B. sat down on the couch and Behlke pushed him back. B.B. testified that he remained sitting at first while Behlke pushed him around a little bit, but B.B. stood up at some point, tried to fight back, and then tried to hit Behlke with a mirror. B.B. stated that he tried to "fight back and punch back and stuff", though he was not really able to fight back because Behlke was stronger. B.B. testified that Behlke threw him or pushed him into a chair, which knocked the chair over. B.B. recalled Behlke pushing him about ten times, and hitting B.B. on the right shoulder with his fist. B.B. was sure that Behlke punched him in the shoulder and thought Behlke might have kicked him in the other shoulder, though he was not certain that Behlke actually kicked him.

{¶10} B.B. confirmed that he told the police officers who responded to the incident that he had been hurt. B.B. also testified that it did not hurt when Behlke pushed him onto the chair and couch several times, nor when Behlke punched him once on the shoulder. B.B. testified that he did not observe any marks on his body and did not hurt the next day.

{¶11} In response to the neighbor's call, Officer Burnett was dispatched to Behlke's home where he found Behlke and the neighbor sitting on the porch. Officer Burnett observed that Behlke's speech was slow and a little slurred, and he detected the odor of alcohol emanating from Behlke. Behlke stated that he had "been a bad dad" and stuck his arms straight out in front of him and told Officer Burnett that he could take him to jail.

{¶12} Regarding the events leading up to Officer Burnett's arrival, Behlke informed him that he had been having problems with B.B.'s behavior. Behlke told Officer Burnett that he found B.B. with a group of friends at a neighbor's house and instructed him to return home.

Officer Burnett testified that Behlke told him that he was struggling to deal with B.B. once they went home and he threw B.B. around from wall to wall.

{¶13} According to Officer Burnett, B.B. was crying, shaking, and visibly nervous, upset, and scared. Inside Behlke's home, Officer Burnett observed a knocked over chair, a mirror on the floor, and other items that had been knocked onto the floor. The photographs admitted as State's Exhibits A through D depicted a scene consistent with his observations. He opined that the condition of the room evidenced that a physical altercation had occurred. Officer Burnett did not observe any injuries on B.B.

{¶14} At trial, Behlke testified that he was upset with B.B. for skipping school on Friday, so he grounded B.B. the following day. However, Behlke later returned from the corner bar to find that B.B. had left the house. Behlke located B.B. and followed him back to their house. Behlke testified that he tried talking to B.B. and then he "snapped" because B.B. was ignoring him and looking away. Behlke testified the following occurred after he snapped:

> A: I picked him up off the couch and threw him in the chair across the room.
>
> Q: Okay.
>
> A: He fell off the chair, picked him off the chair, picked him off the floor, threw him back into the couch.

Behlke denied that he threw B.B. into the overturned blue chair, which he described as a rocking chair, depicted in the photographs in evidence. Rather, he claimed that he threw B.B. into a different chair—a recliner—on the other side of the room. Behlke could not recall punching B.B., and he denied kicking B.B. Behlke did recall throwing B.B. onto the furniture approximately four or five times.

{¶15} Behlke testified that he stopped interacting with B.B. when he heard a knock at the door. He then answered the door to find his next-door neighbor and stepped out on to the

porch to speak with her. B.B. left the house; Behlke believes B.B. knocked the blue chair over as he ran out of the side door. Believing there would be no end to his frustration with B.B.'s defiance, and seeking some form of help, Behlke asked his neighbor to call the police on him. Behlke concedes that he told the police he was a "bad dad" and suggested that the officer arrest him, yet he did not truly feel as though he had done something wrong. Behlke recognized that his behavior that evening was uncharacteristic of him and agreed that he likely scared and caused emotional harm to B.B., though he could not recall B.B. complaining that he was in any pain. Behlke also testified that he had consumed approximately a twelve pack of beer throughout the course of the evening, which he claimed was also not typical of him.

{¶16} The Supreme Court of Ohio has recognized the right of a parent to use corporal punishment as a means to discipline a child, holding that "[n]othing in R.C. 2919.25(A) prevents a parent from properly disciplining his or her child." *State v. Suchomski*, 58 Ohio St.3d 74, 75 (1991). In addressing parental discipline in the context of domestic violence this Court has observed, "[although] R.C. 2919.25(A) does not preclude a parent from disciplining his child, [it] does prohibit a parent from causing 'physical harm' as that term is defined in [R.C. 2901.01(A)(3).]" *State v. Clark*, 9th Dist. Wayne C.A. No. 14AP0002, 2015-Ohio-2978, ¶ 13, citing *Suchomski* at 75. As stated above, physical harm means "injury, illness, or other physiological impairment[.]" R.C. 2901.01(A)(3). "An injury is 'the invasion of any *legally protected interest of another*' and '[a] child does not have any legally protected interest which is invaded by proper and reasonable parental discipline.'" (Emphasis sic., quotation and citation omitted.) *Clark* at ¶ 13, citing *Suchomski* at 75.

{¶17} The State correctly argues that, because Behlke did not challenge the issue of parental discipline as an affirmative defense on appeal, this Court must confine its analysis to the

manifest weight of the evidence regarding an affirmative defense[1]. In its brief to this Court, the State asserts that "the parties and the trial court in this matter treated reasonable and proper parental discipline as an affirmative defense to the domestic violence charge." However, it does not appear in the record that Behlke's trial counsel raised the defense or argued that Behlke's conduct was reasonable and proper parental discipline of his fourteen-year-old son. The record is devoid of any indication that the trial judge considered, let alone discredited, such an affirmative defense as suggested by the State. Nevertheless, we refrain from addressing the issue of reasonable and proper parental discipline, which has not been challenged on appeal in any capacity.

{¶18} The evidence does leave some question as to the extent and severity of the physical harm Behlke caused B.B. Still, the record establishes that Behlke, at a minimum, picked B.B. up and threw him across the room onto the furniture four or five times. In addition to throwing B.B., Behlke, admittedly under the influence of alcohol, could not affirmatively rebut B.B.'s testimony that Behlke punched him in the shoulder. Behlke's actions were sufficient to frighten B.B. and cause B.B. to inform the police that he was hurt that evening, even if he did not sustain any injury. "The domestic violence laws are meant to protect against abuse, not to punish parental discipline" and the courts should be hesitant to interfere with a parent's right to discipline "unless the child is injured." *State v. Adaranijo*, 153 Ohio App.3d 266, 2003-Ohio-3822, ¶ 1, 14 (1st Dist.). However, based on the limited issue raised on appeal, it is

---

[1] In *Clark*, at ¶ 5, this Court, citing to *State v. Rosa,* 7th Dist. Mahoning No. 12 MA 60, 2013–Ohio–5867, acknowledged the split among the district courts of Ohio as to whether proper and reasonable parental discipline must be raised as an affirmative defense, or if the prosecution must establish that it was not proper and reasonable within the physical harm element of the offense of domestic violence. In *Clark*, we declined to consider the issue because it was not raised on appeal, and so our district has yet to take a position.

irrelevant that B.B. did not experience any lasting physical effects from the altercation into the following day.

{¶19} A conviction for domestic violence requires adequate evidence to support a finding that Behlke acted knowingly to cause or attempt to cause physical harm to B.B. Considering all of the evidence in the record, it is conceivable that the trier of fact could have resolved the evidence in favor of a finding that the physical harm element was established, even though any physical harm was minimal in gravity and duration. Therefore, we cannot say the finder of fact lost its way in finding Behlke guilty of domestic violence. We conclude that this is not the exceptional case where the evidence weighs heavily against Behlke's conviction.

{¶20} Behlke's assignment of error is overruled.

III.

{¶21} Having overruled Behlke's assignment of error, the judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

CHRISTINA I. REIHELD, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.