**[Cite as *State v. Webster*, 2025-Ohio-5847.]**

STATE OF OHIO     )          IN THE COURT OF APPEALS
)ss:        NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE   )

STATE OF OHIO           C.A. No.     24AP0020

    Appellee

    v.                      APPEAL FROM JUDGMENT
ENTERED IN THE
BUFFY WEBSTER           WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
    Appellant           CASE No.    2024 CR-B 000067

DECISION AND JOURNAL ENTRY

Dated: December 31, 2025

CARR, Judge.

**{¶1}** Appellant, Buffy Webster, appeals the judgment of the Wayne County Municipal Court. This Court affirms.

I.

**{¶2}** This matter arises out of a domestic incident that occurred at an apartment in Wooster on January 22, 2024. During the incident, Webster used a stun gun on her granddaughter, O.B. Webster was charged with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. Webster pleaded not guilty to the charge at arraignment. The matter proceeded to a jury trial where Webster was found guilty. In addition to a $300 fine, the trial court imposed a 60-day jail sentence and a two-year term of probation.

**{¶3}** On appeal, Webster raises three assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING MS. [WEBSTER'S] [CRIM.R. 29] MOTION FOR ACQUITTAL, AS THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO PROVE EVERY ELEMENT OF DOMESTIC VIOLENCE BEYOND A REASONABLE DOUBT.

{¶4} In her first assignment of error, Webster argues that the trial court erred in denying her motion for acquittal. This Court disagrees.

{¶5} Crim.R. 29(A) provides, in relevant part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶6} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶7} Webster was convicted of one count of domestic violence in violation of R.C. 2919.25(A), which states, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶8} R.C. 2919.25(F)(1) provides that "[f]amily or household member" means any of the following:

(a) Any of the following who is residing or has resided with the offender:

(i) A spouse, a person living as a spouse, or a former spouse of the offender;

(ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;

(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

**Discussion**

{¶9}    In support of her sufficiency challenge, Webster contends that the State failed to present evidence that O.B. was a family or household member for the purposes of R.C. 2919.25(A) because Webster and O.B. were not "related by consanguinity or affinity" as defined by R.C. 2919.25(F)(1)(a)(ii).

{¶10}    During its case-in-chief, the State presented evidence that Webster was part of O.B.'s adoptive family.  O.B. testified that Webster adopted O.B.'s mother, and Webster "functioned just like any other grandma" to O.B.  At one point, O.B. explained that Webster has "pretty much always been a part of [her] life[.]"  At the time of the events that gave rise to this case, O.B. was 15 years old and she had lived with Webster for approximately four years.  O.B.'s mother did not live with Webster and O.B.

{¶11}    On the date of the incident, O.B. was under a great deal of stress and having "negative thoughts[.]"  After dinner, O.B. asked permission to retrieve her phone from Webster's purse so that she could call her mother.  Webster indicated that O.B. was not allowed to make the call.  At that point, O.B. began having thoughts about harming herself.  O.B. attempted to retrieve her phone from the purse but Webster "pushed [O.B.] back away from her [purse]."  O.B. returned to her room, sat on her bed, and began tapping a pencil against her arm.  Webster told O.B. to stop.

O.B. continued to tap the pencil, but she adjusted the pencil so that the tip was no longer making contact with her skin. Webster began yelling at O.B. but O.B. continued to tap the pencil. O.B. suggested calling a crisis hotline because she needed to talk to someone other than Webster. Webster was holding a stun gun as she stood in the doorway to O.B.'s room. As the screaming escalated, Webster walked into the bedroom and stunned O.B. in the chest area.

{¶12} O.B. was in a great deal of pain and experienced dizziness. O.B. later experienced bruising. In addition to the pain, O.B. testified that the experience was traumatic, given that Webster had threatened to use the stun gun in the past but had never actually done so. After being stunned, O.B. pushed Webster away, causing Webster to fall. Webster's boyfriend was in the house at that time, although he had not been involved until that point. When Webster fell, her boyfriend shoved O.B. aside and attempted to aid Webster.

{¶13} Webster called 911 and several officers from the Wooster Police Department responded to the scene. Officer Delaney testified that while it was clear that there was an altercation between a grandmother and her granddaughter, tensions remained high and it was initially unclear who had initiated the altercation. During her conversation with Officer Delaney, Webster indicated that she used the stun gun on her granddaughter to prevent her from engaging in self-harm. Officer Hill initially spoke with O.B., who was very upset. After obtaining a statement from O.B., Officer Hill spoke with Webster. While Webster initially indicated that she used the stun gun in self-defense, Webster changed her story and said that she deployed the stun gun to prevent O.B. from harming herself.

{¶14} Webster's sufficiency challenge is without merit. The State presented evidence that Webster stunned O.B. with the stun gun, causing both physical harm and emotional distress. To the extent that Webster argues that O.B. was not a family or household member, the Supreme

Court has observed that when applying the term "family or household member," Ohio courts should conduct a fact-driven inquiry that focuses on "the nature of the relationship itself[.]" *State v. Williams*, 79 Ohio St.3d 459, 464 (1997). "In enacting R.C. 2919.25, the General Assembly clearly intended to address household violence in all its forms[.]" *State v. Carswell*, 2005-Ohio-6547, ¶ 20 (12th Dist.). Here, the State presented evidence that Webster had adopted O.B.'s mother and that Webster was O.B.'s grandmother. Webster and O.B. had a lifelong relationship. O.B. had lived with Webster for four years at the time of the incident. This evidence, when construed in the light most favorable to the State, was sufficient to sustain Webster's conviction for domestic violence.

{¶15} The first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

MS. WEBSTER'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶16} In her second assignment of error, Webster argues that her domestic violence conviction was against the weight of the evidence. This Court disagrees.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id*.

{¶17} In support of her manifest weight challenge, Webster suggests that the weight of the evidence supports the conclusion that her actions were "a lawful exercise of parental

discipline." Webster cites a number of cases in support of the proposition that reasonable parental disciple is a defense to domestic violence.

{¶18} The Supreme Court of Ohio has held that a domestic violence prosecution under R.C. 2919.25(A) does not interfere with a parent's right to use corporal punishment as a means of discipline. *See State v. Suchomski*, 58 Ohio St.3d 74, 75 (1991). Notably, however, this Court has observed that while a parent has a right to use corporal punishment to discipline a child, the punishment must be proper and reasonable, and must not cause the child to suffer physical harm. (Internal quotations and citations omitted.) *State v. Behlke*, 2017-Ohio-7910, ¶ 16 (9th Dist.). "Physical harm to persons" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3); *Behlke* at ¶ 16.

{¶19} A careful review of the record reveals that Webster cannot prevail on her manifest weight challenge to her conviction for domestic violence. As an initial matter, a review of the trial transcript demonstrates that Webster never asserted the lawful exercise of discipline as an affirmative defense. Assuming without deciding that Webster has not forfeited the issue on appeal,[1] the weight of the evidence does not support the conclusion that this case involved an instance of lawful parental discipline. The State presented ample evidence that O.B. was trying to take proactive steps to work through a difficult mental state at the time of the incident. Even if Webster disapproved of O.B.'s behavior, attacking her with a stun gun was not only wholly improper and entirely unreasonable, but also resulted in O.B. suffering physical harm. Moreover, the only witness to testify on behalf of the defense was Webster's boyfriend, who suggested that O.B. was the aggressor and that Webster deployed the stun gun in self-defense. The testimony of

---

[1] This Court has acknowledged a split among Ohio's appellate district's regarding whether the lawful exercise of discipline must be raised as an affirmative defense. *See Behlke* at ¶ 17, fn. 1.

Webster's boyfriend was not consistent with a defense theory of Webster engaging in lawful disciplinary tactics. It follows that this is not the exceptional case where the trier of fact clearly lost its way. *See Otten,* 33 Ohio App. 3d at 340.

{¶20} Webster's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN FINDING THAT APPELLANT, BUFFY WEBSTER, DID NOT ACT IN SELF-DEFENSE AND/OR DEFENSE OF ANOTHER, AS THE STATE FAILED TO DISPROVE THESE AFFIRMATIVE DEFENSES BEYOND A REASONABLE DOUBT.

{¶21} In her third assignment of error, Webster argues that the jury erroneously concluded that she did not act either in self-defense or in defense of others. This Court disagrees.

{¶22} Webster asserted the affirmative defense of self-defense as well as the affirmative defense of defense of others in relation to O.B. The trial court instructed the jury on both affirmative defenses.

{¶23} The Ohio General Assembly amended the statutory framework pertaining to self-defense in 2019. *See State v. Messenger*, 2022-Ohio-4562, ¶ 15. The current version of R.C. 2901.05(B)(1) provides as follows:

A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶24} "The [S]tate's new burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal[.]" *Messenger* at ¶ 27.

{¶25} The Supreme Court held that a self-defense claim includes the following elements:

(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

*State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). Similar to a claim of self-defense, "[p]ursuant to the defense of others doctrine, a person has a privilege to defend family members to the same extent he is entitled to protect himself." *State v. Skinner*, 2007-Ohio-5601, ¶ 20 (9th Dist.).

{¶26} A thorough review of the record does not support Webster's assertion that the trier of fact clearly lost its way in finding that the State met its burden regarding the affirmative defenses of self-defense and defense of others. O.B. provided testimony detailing that Webster was the aggressor throughout the course of the incident. Notably, Webster was in possession of the stun gun when she followed O.B. to her bedroom. The State presented evidence that Webster deployed the stun gun against a child despite the fact that O.B. was neither causing physical harm to herself, nor attempting to cause physical harm to Webster. To the extent Webster highlights her statements to police following the incident, as well as the testimony of her boyfriend, it is well-settled that the jury is in the best position to resolve credibility disputes and this Court will not overturn a conviction on manifest weight grounds simply because the jury chose to believe the testimony of certain witnesses and not others. *See State v. Dorsey*, 2025-Ohio-1129, ¶ 35 (9th Dist.); *State v. Crowe*, 2005-Ohio-4082, ¶ 22 (9th Dist.). Under these circumstances, we cannot say that this is the exceptional case that warrants reversal on manifest weight grounds.

{¶27} Webster's third assignment of error is overruled.

### III.

**{¶28}** Webster's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

SUTTON, J.
CONCURS.

FLAGG LANZINGER, P.J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

YU KIM-REYNOLDS, Attorney at Law, for Appellant.

ANGELA WYPASEK, Prosecuting Attorney, and JOSEPH F. SALZGEBER, Assistant Prosecuting Attorney, for Appellee.